ECKERD CORPORATION, Appellant,

v.

GLEN EAGLE RETAIL L.P., Glen Eagle Retail Corporation and Genuardi's Family Markets, Inc., Appellees.

Superior Court of Pennsylvania.

Argued April 14, 2004.
Filed June 18, 2004.

Henry F. Reichner, Philadelphia, for appellant.

Virginia H. McMichael, Philadelphia, for appellee.

Before: DEL SOLE, P.J., ORIE MELVIN and BECK, JJ.

OPINION BY BECK, J.:

¶ 1 We decide whether a tenant may recover damages from a landlord for violation of an exclusivity provision contained in their lease agreement.

¶ 2 Plaintiff-appellant Eckerd Corporation operates a drug store in space it rents from defendant-appellee Glen Eagle Retail, L.P., Glen Eagle Retail Corporation (Glen Eagle), in the Glen Eagle Shopping Center. The parties entered into a lease agreement which governs their rights, and which granted Eckerd the exclusive right to operate a pharmacy at the shopping center. Eckerd brought this action against Glen Eagle for lost revenues it allegedly suffered when the Genuardi's supermarket operating in the same shopping

center opened a pharmacy department.[1] Both parties filed motions for summary judgment, and the trial court granted the motion in favor of Glen Eagle. This timely appeal followed.

¶3 Our scope of review in an appeal from the trial court's order disposing of summary judgment motions is plenary. *Stanton v. Lackawanna Energy, Ltd.*, 820 A.2d 1256, 1258 (Pa.Super.2003). We consider whether the record documents a question of material fact concerning an element of the claim or defense at issue; if no such question appears, the court must then determine whether the moving party is entitled to judgment on the basis of substantive law, and conversely, if a question of material fact is apparent, the court must defer the question for consideration by the jury and deny the motion for summary judgment. *Id.* at 1258–59.

¶4 Genuardi's entered into a lease with Glen Eagle in November 1988. That lease authorized Genuardi's to operate a supermarket as follows: "Tenant shall use and occupy the Leased Premises for a full service supermarket, including any retail use now or hereafter customarily found in full service supermarkets around the country, and for no other purpose."

¶5 Eckerd entered into its lease with Glen Eagle in January 1989. With regard to its "Exclusive Tenancy" the lease provided:

Landlord covenants and agrees that during the term of this lease, provided that Tenant is operating a drug store or drug department in which a registered pharmacist is in attendance within the demised premises, Landlord will not use or occupy, or permit the use or occupancy of, any space not hereby demised to Tenant, which is located within the Entire Premises for (i) the operation of a drug store, or a drug department, in which a registered pharmacist is in attendance or required by law to be in attendance for any period of time, or (ii) the operation of any store primarily engaged in the sale of health and/or beauty aids, nor will Landlord enter into any lease of such space which will permit the tenant or any subtenant thereunder or assignee thereof to use or occupy the space so leased for said purpose during the term hereof.

The lease further provided:

It is the intention of Landlord to hereby grant to Tenant the exclusive right to operate and conduct within the Entire Premises the aforesaid type of retail business so long as this lease remains in effect. Landlord covenants and agrees that rights similar to the rights herein granted by Landlord to Tenant are not held by any other tenant or occupant of space within the Entire Premises.

¶6 In August 2001, Genuardi's opened a pharmacy department. Eckerd's attempt to enjoin the opening failed, and Eckerd filed this action for damages based on Glen Eagle's breach of the lease agreement. The trial judge granted summary judgment in favor of Glen Eagle on the basis that the lease's terms merely prevented Glen Eagle from entering into a *later* lease with another pharmacy or drug store, which Glen Eagle had not done, and that Genuardi's lease allowing "any retail use now or hereafter customarily found in full service supermarkets around the country" predated Eckerd's exclusivity provision, and thus did not violate it. We disagree.

1. Genuardi's was dismissed from the case in early 2003. Only Eckerd's claims against Glen Eagle remain.

¶ 7 Glen Eagle, and the trial court, focused on only one part of the restriction found in Eckerd's lease: that Glen Eagle would not "enter into any lease of such space which will permit the tenant or any subtenant thereunder or assignee thereof to use or occupy the space so leased for said purpose during the term hereof." They argue that this provision precludes Glen Eagle from *prospectively* entering into a new lease with another drug store, and that since Genuardi's was not a new tenant, and its lease predated Eckerd's, the prohibition in Eckerd's lease does not apply to Genuardi's. This was error.

¶ 8 Obviously, Genuardi's lease predated Eckerd's lease. However, this is irrelevant in light of other critical language in the Eckerd lease. Glen Eagle promised Eckerd that, during the term of Eckerd's lease, Glen Eagle would not "permit the use or occupancy of, any space not hereby demised to Tenant, which is located within the Entire Premises for (i) the operation of a drug store, or a drug department." This unambiguous language clearly was violated by Glen Eagle when it allowed Genuardi's to open its pharmacy department.

¶ 9 Our Supreme Court has acknowledged the importance of a landlord's non-compete promise. In *Teodori v. Werner*, 490 Pa. 58, 415 A.2d 31 (1980), the Court stated:

It is obvious that a landlord's non-competition promise is critical to a commercial lease agreement like the one here. "The mere presence in a lease of a non-competition promise by the landlord justifies the conclusion that it is essential that the promise be observed if the tenant is to conduct his business on the leased property profitably."

*Id.* at 65, 415 A.2d at 34. In *Teodori*, the Court held that the tenant had the right to withhold rental payments when the landlord breached the non-competition provi-

sions of the lease. The Court treated the non-compete provisions in the lease as a contract, and held that the tenant had the right to withhold its own performance in the face of the landlord's breach of that contract. *Compare Stonehedge Square, L.P. v. Movie Merchants, Inc.*, 552 Pa. 412, 715 A.2d 1082 (1998) (holding that, although some aspects of lease agreements are governed by the law of contracts, non-breaching landlord whose tenant has abandoned the property in violation of the lease does not have a duty to mitigate damages).

¶ 10 Our decision in *Berger v. Ackerman*, 293 Pa.Super. 457, 439 A.2d 200 (1981), does not direct a contrary result. In *Berger*, the plaintiff drug store operator sought to enforce a provision in its lease that allegedly prevented another tenant, a supermarket, from dispensing prescription medications. This court affirmed the denial of relief. However, the language in the *Berger* lease was completely different from that involved here, and provided the tenant supermarket with an exception to the drug store's exclusivity provision. In *Berger*, the drug store had "the exclusive right to conduct the business of Drug Store in the said Shopping Center. It is understood, however, that...any sale of drugs by...Giant Eagle Market shall in no way conflict with the provisions of this paragraph." 439 A.2d at 202. In order for the drug store to prevail, the *Berger* court held that the restrictive covenant "must by its *expressed terms* clearly indicate that the parties intended to preclude" the supermarket from selling prescription medications. *Id.* (emphasis in original). Such an express preclusion does appear in this case. *See also J.C. Penney Co. v. Giant Eagle, Inc.*, 85 F.3d 120 (3d Cir.1996) (holding drug store was entitled to injunction against supermarket's operation of pharmacy department in violation of iden-

tical exclusivity provisions included in lease between drug store and landlord).

¶ 11 Glen Eagle relies on longstanding case law for the proposition that "restrictions on the use of land are not favored by the law because they are an interference with an owner's free and full enjoyment of his property; that nothing will be deemed a violation of a restriction that is not in plain disregard of its express words..." *Jones v. Park Lane for Convalescents, Inc.*, 384 Pa. 268, 272, 120 A.2d 535, 537 (1956). The general proposition is correct. However, the lease restrictions in this case are expressly stated, and their violation clear. Under such circumstances, enforcement of the restriction is proper.

¶ 12 We hold that, under the unambiguous terms[2] of the lease agreement at issue here, the trial court erred when it granted summary judgment in favor of Glen Eagle. We reverse and remand for entry of summary judgment in favor of Eckerd on liability, and for a trial on damages.

¶ 13 Order granting summary judgment in favor of appellee Glen Eagle reversed; matter remanded for entry of summary judgment in favor of appellant Eckerd, and for trial on damages only.

¶ 14 Jurisdiction is relinquished.

---

2. Even if we were to consider the lease terms ambiguous, Glen Eagle's intent to grant Eckerd exclusive rights to operate a pharmacy was made clear during the parties' negotiations for the lease. Specifically, the parties struck early language that would have given Genuardi's the right to open a pharmacy department. Glen Eagle's representative confirmed in a letter that "we have restricted the food store from a pharmacy operation, thus granting [Eckerd] exclusivity for the operation of a [Drug Store]."