J-A08009-16

2016 PA Super 208

| | |
|---|---|
| IRENE MCLAFFERTY, MICHAEL ROGALA AND FRED FISHER,<br><br>        Appellants<br><br>        v.<br><br>COUNCIL FOR THE ASSOCIATION OF OWNERS OF CONDOMINIUM NO. ONE, INC. A/K/A WASHINGTON MEWS CONDOMINIUM ASSOCIATION COUNCIL; COUNCIL MEMBERS: MEGAN OYLER; ANGELINE SIMONONIS, DONNA IRVIN; KIRK SCHNECK; JOHN FEDERICO; ALEX ESCHER; BILL GEFTMAN; EMILY LERNER; ASSOCIATION OF OWNERS OF CONDOMINIUM NO. ONE, INC. A/K/A WASHINGTON MEWS CONDOMINIUM ASSOCIATION | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br><br><br><br><br>No. 1338 EDA 2015 |

Appeal from the Order Entered April 8, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 140303466

BEFORE:  BOWES, OLSON AND STRASSBURGER,* JJ.

OPINION BY BOWES, J.:                    **FILED SEPTEMBER 12, 2016**

This appeal presents novel questions involving a condominium governed by the Unit Property Act ("UPA"), former 68 P.S. § 700.101 *et seq.* (repealed by 1980, July 2, P.L. 286, No. 82, § 2, effective in 120 days), and the retroactive application of the Uniform Condominium Act ("UCA"), 68 Pa.C.S. § 3101 *et seq.*  The trial court granted judgment on the pleadings in

_____

* Retired Senior Judge assigned to the Superior Court.

favor of the Defendants and dismissed Plaintiffs' count seeking declaratory relief.[1]  After careful review, we reverse and remand for further proceedings.

Plaintiffs-Appellants are three unit owners in Condominium No. One, Inc., also known as Washington Mews Condominium (the "Condominium"), in Philadelphia.  Defendants-Appellees are the Association of Owners for the Condominium ("Association"), the Council for the Association ("Council"), and the individual members of Council.

The Condominium was created in 1967 pursuant to the UPA by the recording of a Declaration of Condominium ("Original Declaration").  As required by the UPA, a Council was formed to manage the Condominium property.  The first Council was entrusted with drafting a Code of Regulations (the "Code") that would delineate *inter alia* the method for calling meetings of the owners, define a quorum for the transaction of business, explain the duties of officers, and set forth "the method of adopting and of amending rules governing the details for the use and

---

[1]  This order is final and appealable pursuant to former Pa.R.A.P. 341(b)(2) (rescinded and amended December 14, 2014, effective April 1, 2016 for all orders entered on or after that date), which permits an appeal from any order expressly defined as a final order by statute.  ***See In re Order Amending Rule 311, 341 & 904 of the Pa. Rules of Appellate Procedure***, 2015 Pa. LEXIS 2893, *1 (Pa. Dec. 14, 2015).  Title 42 Pa.C.S. § 7532 provides that orders granting or denying declaratory relief have the force and effect of a final judgment.  ***Nationwide Mut. Ins. Co. v. Wickett***, 763 A.2d 813, (Pa. 2000).

operation of the property and the use of the common elements." 68 P.S. § 700.303(9). The Code, like the Declaration, was recorded with the Recorder of Deeds and, as amended, they constitute the governing documents of the Condominium.[2]

In 2012, Council proposed an Amended and Restated Declaration ("Amended Declaration"). At the annual meeting of the Condominium unit owners on February 21, 2013, approval of the Amended Declaration was put to a vote. The minutes of the meeting reflect that the instrument was

---

[2] Although the UPA has been repealed, it continues to govern condominiums created pursuant to that statute in certain respects. As Comment 3, to § 3102 of the UCA explains, that section adopts a three-step approach to pre-UCA condominiums.

> First, certain provisions of the [UCA] automatically apply to "old" condominiums, but only prospectively, and only in a manner which does not invalidate provisions of condominium declarations and bylaws valid under "old" law. Second, "old" law remains applicable to previously created condominiums where not automatically displaced by the [UCA]. Third, owners of "old condominiums may amend provisions of their declaration or bylaws, even if the amendment would not be permitted by "old" law, so long as (a) the amendment is adopted in accordance with the procedure required by "old" law and the existing declaration and bylaws, and (b) the substance of the amendment does not violate this Act [UCA]."

UCA, 68 Pa.C.S. § 3102, Comment 3.

adopted by fifty-five percent of the ownership,[3] and it was subsequently filed with the Philadelphia Recorder of Deeds.

On March 31, 2014, the Plaintiffs instituted this action against the Association, Council, its members, and the various unit owners, challenging Council's authority to amend the Original Declaration of Condominium at all, or in the alternative, to amend it by a simple majority vote.[4] They asked the court to declare that the instant amendment to the Original Declaration was not permitted for several reasons. They maintained, first, that amendment was permitted only to change the number of units in the complex or the owners' percentage of ownership in the common elements, and only then with the unanimous agreement of the unit owners. Furthermore, the provision of the Code permitting amendment by a majority vote did not apply to an amendment of the Declaration. Finally, Plaintiffs maintained that the UCA retroactively applied and required unanimous consent to amend a declaration that changed the use of the property, or in the alternative, required a vote of sixty-seven percent of the ownership of the units to amend other provisions of the declaration. In any event, according to

---

[3] Plaintiffs represent that only 52.98 percent of the unit owners approved the Amended and Restated Declaration. The discrepancy is irrelevant in light of our disposition.

[4] Plaintiffs originally sued all of the owners of the Condominium units. On June 3, 2014, the trial court approved a stipulation that these individuals were not indispensable parties and dismissed them from the lawsuit.

- 4 -

Plaintiffs, a simple majority approval of the unit owners was insufficient to accomplish this amendment of the Original Declaration.

Plaintiffs' underlying opposition to the Amended and Restated Declaration is based on what they contend are significant restrictions upon the unit owners' flexibility in the use of their property. Plaintiffs point to the Amended Declaration's provisions limiting the rental of units to a five-year term and authorizing Council to disapprove rentals entirely without a reasonable basis. They also cite provisions in the Amended Declaration that permit Council to impose fines, confess judgment and eviction without due process, record liens against unit owners, and assess fees for pet ownership. The Amended Declaration, according to Plaintiffs, changed the use of the property and thus required more than the approval of a simple majority of owners.[5] Plaintiffs also pled claims for breach of the obligation of good faith and tortious interference with a contractual relationship, although the trial court sustained preliminary objections to the latter claim and dismissed it.

Defendants filed an answer and subsequently moved for judgment on the pleadings. On April 8, 2015, the court granted partial judgment on the pleadings and struck the count seeking declaratory relief. The trial court

---

[5] The Amended and Restated Declaration expressly revoked application of the UPA and submitted the Condominium to the provisions of the UCA. Many of the restrictions Plaintiffs find objectionable are consistent with the provisions of the UCA.

concluded that the UCA did not apply retroactively to the process of amending the Original Declaration. The court reasoned that although the vote on the amendment was an event that occurred after the adoption of the UCA, the sixty-seven percent approval requirement of the UCA, specifically, 68 Pa.C.S. § 3219, would invalidate an existing provision of the old governing documents, *i.e.*, Article II of the Code, entitled "Voting, Majority of Owners, Quorum, Proxies," which the court construed as requiring only fifty-one percent approval to amend the Declaration. In so holding, the trial court found that the Code's fifty-one percent approval provision applied to amendment of the Declaration, implicitly rejecting Plaintiffs' position that the Code's voting provisions applied only to the Code.

Plaintiffs timely filed the within appeal, and they present two issues for our review:

1. Whether the lower court erred in dismissing Plaintiffs/Appellants' Claim for Declaratory Judgment regarding Defendants/Appellees' 2013 amendment of the Washington Mews Declaration of Condominium where **the Original Declaration permitted only a limited amendment by unanimous consent and where the Uniform Condominium Act <u>does not invalidate</u> any provision in the Original Declaration or Code or Regulations.**

2. Whether the lower court erred in dismissing Plaintiffs' claim for Declaratory Judgment concerning the 2013 amendment of Declaration of Condominium without the unanimous consent of unit owners where the 2013 Amendment restricts the use of individual units and where unanimous consent is needed to change the uses to which a unit is restricted pursuant to section 3219(d) of the Uniform Condominium Act (UCA), 68

Pa.C.S.A. 3101 et. seq. Likewise, did the lower court err in finding that the 2013 amendment required only majority approval where the UCA requires at least 67% of the unit owner votes for some amendments and unanimous consent to do what Defendants did with the 2013 amendment to the Original Declaration in this case.

Appellants' brief at 5 (emphasis in original). Succinctly stated, the issue is whether approval by a simple majority of the unit owners was legally sufficient to adopt the 2013 Amended and Restated Condominium Declaration. The answer to that question hinges on whether Code provisions providing for amendment by a majority of the unit owners apply to this amendment of the Original Declaration. For the reasons that follow, we conclude that they do not.

Judgment on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034, which provides that "after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings." Pa.R.C.P. 1034(a). A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law.

Appellate review of an order granting judgment on the pleadings is plenary and we apply the same standard employed by the trial court. Our review is confined to the pleadings and relevant documents. We must accept as true all well pleaded statements of fact, admissions, and any

documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts that were specifically admitted. ***Southwestern Energy Prod. Co. v. Forest Res., LLC***, 83 A.3d 177, 185 (Pa.Super. 2013). We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise. ***Id***.

Our standard of review in a declaratory judgment action is limited to determining whether the trial court clearly abused its discretion or committed an error of law. ***Pocono Summit Realty, LLC v. Ahmad Amer, LLC***, 52 A.3d 261, 265 (Pa.Super. 2012). We may not substitute our judgment for that of the trial court if the court's determination is supported by the evidence. ***Id***. However, the application of the law is always subject to our review. ***Id***. Where, as here, "the interpretation of a contract is a matter of law, we need not defer to the trial court's reading of the Agreement." ***Welteroth v. Harvey***, 912 A.2d 863, 866 (Pa.Super. 2006).

We begin with an examination of the statutes and the Condominium's governing documents that are implicated herein. The UPA defines a declaration as "the instrument by which the owner of the property submits it to the provisions of this act as hereinafter provided, and all amendments thereof." 68 P.S. § 700.102(6). It shall set forth "the percentage of undivided interest in the common elements assigned to each unit," and that the percentage "shall not be altered except by recording an amended

declaration duly executed by all of the unit owners affected thereby." ***Id***. at 700.202. Thus, the UPA does not prohibit, and indeed requires in some circumstances, amendment to the declaration. In this case, however, the UPA and the Condominium's Original Declaration are silent regarding amendments to the Declaration for other purposes, and neither the statute nor the Original Declaration delineates the percentage of owner approval required for the adoption of such amendments.

The Original Declaration of the Condominium is not contained in the certified record. However, the Amended Declaration of June 17, 1969 (hereinafter "Original Declaration"), modifying and amending the Developer's Declaration dated February 7, 1967, is available for our review. The stated purpose of that amendment to the Original Declaration was to document changes in the architect's plans and to amend the agreements of sale with the unit owners to reflect additional undivided interest in the common elements due to a reduction in the number of units from fifty-five to fifty-two. It defines the terms, describes the units, and sets forth the new percentage of undivided interest and commensurate voting rights and *pro rata* share of common expenses associated with those units. In addition, it describes the common units, responsibilities for maintenance, utility bills, and tax assessment. It also provides that a unit owner cannot sell, lease, or gift any interest in a unit, except to another unit owner, without the approval of the Association.

The Code regulates the management and operation of the Condominium. The UPA provides that the Code may be amended for many reasons, including, but not limited to, "the method of adopting and of amending rules governing the details of the use and operation of the property and the use of the common elements." UPA, 68 P.S. §§ 700.102(2) and 700.303(9). Amendment can be accomplished by a majority vote of the unit owners at a meeting of the owners who are entitled to cast a vote. *Id*. at § 700.302.

In accordance with the UPA, Council promulgated a Code of Regulations to govern administration of the Condominium property. It was amended several times and the changes are noted in footnotes in the later versions. The February 15, 1999 version of the Code outlines the procedures for voting, provides for an Association of Owners, annual and special meetings, a Council, its election and term, and its duties and powers. The Code discusses maintenance of common elements, assessment of common expenses, the establishment of operating reserves, charges against individual unit owners, and the obligations of the owners to maintain and repair their own units. It declares that all units are to be utilized for residential purposes only, sets forth rules of conduct, and provides that "Reasonable regulations concerning the use of the Property may be made and amended from time to time by the Council in the manner provided by laws." Code of Regulations, Article VII, Section 4(4) at 11. Article IX

provides for amendment to the Code of Regulations by the affirmative vote of the owners representing a majority of the votes entitled to be cast at a meeting. Code of Regulations, Article IX, Sections 1 and 2, at 13.

The controversy herein arises from the approval and adoption of the Amended and Restated Declaration of Condominium dated March 13, 2013, by a simple majority of the unit owners. Plaintiffs contend that the Original Declaration could not be amended, or amended solely in limited instances, and then only by unanimous consent of the unit owners. They maintain that the Code provision permitting amendment by the vote of a simple majority applied solely to amendment of the Code and rules governing the administration of the Condominium, but not to the Declaration. Plaintiffs contend that, in the absence of any provision in the Original Declaration delineating the percentage necessary to approve these types of amendments, the UCA retroactively governs. The UCA, specifically 68 Pa.C.S. § 3219,[6] requires approval of sixty-seven percent of the unit owners

_____

[6] § 3219. Amendment of declaration, provides in pertinent part:

   **(a)** ***Number of votes required.***

   **(1)** The declaration, including the plats and plans, may be amended only by vote or agreement of unit owners of units to which at least:

      **(i)** Sixty-seven percent of the votes in the association are allocated;

*(Footnote Continued Next Page)*

————————————

> **(ii)** any larger majority the declaration specifies; or
>
> **(iii)** a smaller number as specified in the declaration if all of the units are restricted exclusively to nonresidential use.
>
>     . . . .

**(d)** ***When unanimous consent required.*** **—**

> **(1)** Except to the extent expressly permitted or required by other provisions of this subpart, no amendment may create or increase special declarant rights, increase the number of units or change the boundaries of any unit, the common element interest, common expense liability or voting strength in the association allocated to a unit, or the uses to which any unit is restricted, in the absence of unanimous consent of the unit owners.
>
> **(2)** As used in this subsection, the term "uses to which any unit is restricted" shall not include leasing of units.
>
>     . . . .

**(f)** ***Corrective amendments.*** **—** Except as otherwise provided in the declaration, if any amendment to the declaration is necessary in the judgment of the executive board to cure any ambiguity or to correct or supplement any provision of the declaration, including the plats and plans, that is defective, missing or inconsistent with any other provision thereof or with this subpart, . . . . the executive board may at its discretion effect an appropriate corrective amendment without the approval of the unit owners or the holders of any liens on all or any part of the condominium, upon receipt by the executive board of an opinion from independent legal counsel to the effect that the proposed amendment is permitted by the terms of this subsection.

for most amendments, unanimous consent for amendments affecting the use of the property.

According to the Defendants, the 2013 Amended and Restated Declaration was adopted in accordance with applicable law, the UPA, and the UCA did not apply. They direct our attention to references to amendment in the UPA and Original Declaration, and the fact that the Declaration had been twice amended before the enactment of the UCA, as proof that amendment was contemplated and permitted. Defendants concede that the UPA and the Original Declaration do not address the percentage of approval required for the instant amendment, but they assert that the UPA and Code work in tandem with the Original Declaration and should be construed together. Since the Code provides for a majority vote of the owners in accordance with the percentages of ownership assigned in the Declaration to approve an amendment, Defendants contend that this Code provision also applies to amendment of the Declaration.

It is beyond cavil that both the UPA and the Original Declaration authorize, and in some cases mandate, amendment of the Original Declaration. Nor have Plaintiffs persuaded us that the legislature intended to restrict amendment of a declaration to those limited circumstances where there was a change in the unit owners' interest requiring unanimous

_(Footnote Continued)_ —————————————————

UCA, 68 Pa.C.S. § 3219.

consent.[7]  **See** UPA, 68 P.S. § 700.202.   Furthermore, we agree with the trial court that both the UPA and the Original Declaration are silent as to the percentage of the vote required to adopt other types of amendments to the Declaration.  We disagree, however, with the trial court's conclusion that the Code provision authorizing its own amendment by a majority of the unit owners fills that gap.

The trial court's finding that amendment to the Original Declaration is governed by the Code and requires only the approval of a simple majority is refuted by the Code itself.  In arriving at that conclusion, the trial court relied upon Article II of the Code.  That provision merely provides that voting shall be on a percentage basis of ownership, defines a quorum and what is meant by the term "majority of owners," and authorizes voting by proxy.[8]  It is Article IX, entitled "Amendments to Code of Regulations,"

_____

[7] Plaintiffs point to the unanimous approval of the 1969 Amended Declaration as evidence that **any** amendment of the Declaration required the consent of all unit owners to be effective.  We disagree.  Since the purpose of the 1969 amendment to the Declaration was to reduce the number of units from fifty-five to fifty-two, thereby altering the percentage of the unit owners' undivided interest in the common elements, that amendment was governed by the express terms of the Original Declaration requiring unanimous consent to effect any change in the percentage of ownership. The amendment to the Declaration herein does not affect the percentage of ownership.

[8] Article II, entitled "Voting, Majority of Owners, Quorum, Proxies" provides:
     Section 1. <u>Voting</u>. Voting shall be on a percentage basis and the
     percentage of the vote to which the owner is entitled is the
*(Footnote Continued Next Page)*

which governs the percentage of votes required to amend the Code. It provides that "no amendment or change of the provisions **of this Code** shall be effective unless it is adopted at a meeting of the unit owners by the affirmative vote of at least those unit owners who represent a majority of the votes entitled to be cast at that meeting." Code of Regulations, Article IX, Section 1, at 13 (emphasis added). Thus, by its express terms, the Code's amendment provisions apply only to the Code, not to the Declaration. Even if we read the UPA, the Original Declaration, and the Code of Regulations together, as Defendants urge us to do, the statute and documents are silent as to the percentage of votes necessary to amend the Original Declaration, except in the instance where unanimous consent is required to amend the Declaration due to a change in the ownership interest

*(Footnote Continued)* _____

> percentage of ownership in the Common Elements assigned to the Unit or Units in the Declaration.
>
> Section 2. <u>Majority of Owners</u>. As used in this Code, the term "majority of owners" shall mean those owners holding 51% of the votes in accordance with the percentages assigned in the Declaration.
>
> Section 3. <u>Quorum</u>. Except as otherwise provided in this Code, the presence in person or by proxy of a "majority of owners" as defined in Section 2 of this Article shall constitute a quorum.
>
> Section 4. <u>Proxies</u>. Votes may be cast in person or by proxy. Proxies must be filed with the Secretary before the appointed time of each meeting.

Code of Regulations, Article II, at 1-2.

of the unit owners. Thus, we find that the trial court erred in concluding that the Code's majority vote provision is applicable to and validates the instant amendment of the Declaration.

Plaintiffs contend that the amendment of the Declaration is governed by the UCA. They direct our attention to 68 Pa.C.S. § 3102 (a.1) of the UCA, which operates to render certain sections of the UCA retroactively applicable to condominiums created prior to the UCA. Section 3219, amendment of declaration, is one of the provisions made retroactive, and it "shall apply to all condominiums created in this Commonwealth before the effective date of this subsection" when two criteria are met: 1) when the events and circumstances occur after the effective date of the UCA; and 2) the UCA provision does not invalidate existing provisions of the declaration, code of regulations, bylaws or declaration plan of those condominiums." 68 Pa.C.S. § 3102(A.1)(1).

Plaintiffs contend that the amendment herein occurred after the passage of the UCA, thus satisfying the first prong. Section 3219 requires at least a vote of sixty-seven percent of the unit owners to approve the amendment, but it demands 100% where the amendment *inter alia* increases "the uses to which any unit is restricted."[9] Plaintiffs assert that

_____

[9] The UCA, 68 Pa.C.S. § 3219. Amendment of declaration, provides in pertinent part:

*(Footnote Continued Next Page)*

- 16 -

**(b)** *Number of votes required.*

**(1)** The declaration, including the plats and plans, may be amended only by vote or agreement of unit owners of units to which at least:

**(i)** Sixty-seven percent of the votes in the association are allocated;

**(ii)** any larger majority the declaration specifies; or

**(iii)** a smaller number as specified in the declaration if all of the units are restricted exclusively to nonresidential use.

. . . .

**(d)** *When unanimous consent required. —*

**(1)** Except to the extent expressly permitted or required by other provisions of this subpart, no amendment may create or increase special declarant rights, increase the number of units or change the boundaries of any unit, the common element interest, common expense liability or voting strength in the association allocated to a unit, or the uses to which any unit is restricted, in the absence of unanimous consent of the unit owners.

**(2)** As used in this subsection, the term "uses to which any unit is restricted" shall not include leasing of units.

. . . .

**(f)** *Corrective amendments. —* Except as otherwise provided in the declaration, if any amendment to the declaration is necessary in the judgment of the executive board to cure any ambiguity or to correct or supplement any provision of the declaration, including the plats and plans, that is defective, missing or inconsistent with any other provision thereof or with

the application of this section would not invalidate any of the provisions in the UPA, the Original Declaration, or the Code, as the UPA and the governing documents are silent as to the percentage of approval required to amend the Original Declaration in these circumstances.

Defendants counter that application of the UCA's requirement that sixty-seven percent of the unit owners approve an amendment to the declaration contravenes the provisions of the governing documents, *i.e.*, the Code, which permits amendment by a simple majority. In support of their position, Defendants direct our attention to the Uniform Planned Community Act ("UPCA"), 68 Pa.C.S. § 5101, effective in 1997, and cases decided under that statute. They maintain that it is an analog to the UCA and contains an identical provision regarding amendment that has been construed to permit amendment as long as it is adopted in accordance with the procedures required by the old law and its substance does not violate the new law. 68 Pa.C.S. § 5102(b). They contend that the unit owners of the Condominium herein were permitted to adopt the Amended and Restated Declaration

*(Footnote Continued)* ─────────────

> this subpart, . . . . the executive board may at its discretion effect an appropriate corrective amendment without the approval of the unit owners or the holders of any liens on all or any part of the condominium, upon receipt by the executive board of an opinion from independent legal counsel to the effect that the proposed amendment is permitted by the terms of this subsection.

68 Pa.C.S.§ 3219.

because it was adopted in accordance with the procedure required by "old" law, *i.e.*, the Code's majority approval provision, and the substance of the amendment did not violate the UCA. They direct our attention to *Cumberland Dev. & Mktg. Inc. v. Lake Adventure Community Assn, Inc.*, 44 Pa. D & C 4th 118 (Pike Co. 1998), where the court held that the UPCA's provision for amendment of the declaration did not apply retroactively as it was in conflict with the procedure set forth in the original development for its amendment.

Herein, in contrast to *Cumberland Dev.*, *supra*, although the Original Declaration permits amendment, it is silent as to the percentage required for approval of an amendment in the circumstances herein. Since we have already concluded that the Code's majority approval provision does not apply to amendment of the Declaration on the facts herein, there are no procedures to follow under the "old law." Hence, the UCA's § 3219 sixty-seven percent approval requirement does not invalidate any existing provisions of the old law. Absent a conflict with the original governing documents, the UCA governs, and approval by a simple majority of the unit owners was insufficient to amend the Declaration.[10]

_____

[10] Our review of the Amended and Restated Declaration reveals that it sought to remove the Condominium from the UPA and subject it to the provisions of the UCA, although the parties do not characterize it as such. The UCA provides the manner in which this can be accomplished without

*(Footnote Continued Next Page)*

Order granting judgment on the pleadings reversed. Case remanded for further proceedings consistent herewith. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/12/2016

---

*(Footnote Continued)* ───────

terminating the condominium status of the property or affecting liens or encumbrances on the property. It requires approval of "sixty-seven percent of the persons whose actions would have been required to effect a removal of the property from the Unit Property Act pursuant to section 601 thereof." 68 Pa.C.S. § 3102(b). Section 601 of the UPA requires approval of revocation by "all the unit owners and by the holders of all mortgages, judgements or other liens affecting the units." UPA, 68 P.S. § 700.601. The approval by a simple majority of the unit owners would not suffice to accomplish this either.